## James Berdan, ex'r, etc.

### v.

## James M. Allan.

1. Promissory note—Payment.—The court is of opinion that the evidence wholly fails to support the plea of payment of the note in suit.

2. Evidence—Declarations of co-executor.—It is not error to refuse to allow the defendant to give evidence of statements made to him by a deceased executor in his life-time, in the absence of his co-executor.

Appeal from the Circuit Court of Henry county; the Hon. John J. Glenn, Judge, presiding. Opinion filed February 24, 1882.

Mr. James E. Munroe, for appellant; that payment to trustees named in a trust deed, except as received as the proceeds of a sale of the lands on which the debt was secured, would not be a good payment, cited 2 Am. Law. Reg. 716.

The fact that the trustees have released the land held by them in trust, is not proof of payment of the debt: Briggs v. Davis, 20 N. Y. 22; Devinney v. Reynolds, 1 Watts & Serg. 328; Stevens v. Winship, 1 Pick. 317; Minet v. Prescott, 14 Mass. 495; Cleveland v. Boerum, 27 Barb. 252; Ryan v. Dunlap, 17 Ill. 43.

The burden is upon appellee to show the authority of the trustees in making the release: Swarthout v. Swarthout, 7 Barb. 366; Dike v. Ricks, 3 Croke, 335; 2 Perry on Trusts, § 785; 2 Jones on Mortgages, § 1830; 2 Perry on Trusts, § 602; Cassell v. Ross, 33 Ill. 259; Gibson v. Jones, 5 Leigh, 403; Norman v. Hill, 1 Patton & Heath, 676; Jackson v. Clark, 7 Johns. 226; Jackson v. Esty, 7 Wend. 150.

Possession of a note by the payee, uncanceled, is strong evidence of non-payment: Brembridge v. Osborne, 1 Stark. 374; Somervail v. Gillies, 31 Wis. 152; Powell v. Swan, 5 Dana, 1; Howell v. Van Seelen, 6 Hun. 116; Stembough v. Hallam, 48 Ill. 305.

It is not proper in an instruction to give undue prominence

Berdan v. Allan.

to an isolated fact: Hewett v. Johnson, 72 Ill. 512; Andrews
v. The People, 60 Ill. 357; Hatch v. Marsh, 71 Ill. 371; Frame
v. Badger, 79 Ill. 446; Merchant's Ins. Co. v. Paige, 60 Ill.
448; Guardian Ins. Co. v. Hogan, 80 Ill. 36.

No presumption can be drawn from a presumption: Man-
ning v. Ins. Co., 100 U. S. 697; Douglass v. Mitchell, 35 Pa.
St. 440; United States v. Ross, 92 U. S. 283; McLeer v. Mc-
Murray, 58 Pa. 135; Richmond v. Aiken, 25 Vt. 326; Pen-
nington v. Yell, 11 Ark. 235; Back v. Cohn, 3 La. An. 103.

It is not sufficient that a part of the instructions contain a
correct exposition of the law, if it is incorrectly announced in
others: Chicago v. Payne, 49 Ill. 500; Camp Point Mfg. Co. v.
Ballou, 71 Ill. 417; T. P. & W. R. R. Co. v. Larmon, 67 Ill. 69.

Evidence of declarations made by a co-executor since de-
ceased, was improper: Whitmer v. Rucker, 71 Ill. 412;
Boynton v. Phelps, 56 Ill. 218; Merrill v. Aiken, 59 Ill. 19;
Langley v. Dodsworth, 81 Ill. 86; Redden v. Inman, 6 Brad-
well, 56; Lewis v. Easton, 50 Ala. 471; Stuckey v. Bilert, 41
Ala. 704; Brown v. Brightman, 11 Allen, 227; Reinhart v.
Evans, 48 Miss. 230; Maltom v. Young, 45 N. Y. 696; Dewey
v. Goodnough, 56 Barb. 57.

Courts can not presume payment from lapse of time in any
period less than that fixed by the statute: Grafton v. Doe, 19
Vt. 463; Rogers v. Burns, 27 Pa. St. 525; Forsythe v. Ripley,
2 Greene (Iowa), 181.

Mr. CHARLES DUNHAM for appellee; upon the presumption
of payment arising from the fact of release by the trustees,
cited Graham v. Anderson, 42 Ill. 514; Munn v. Burgess, 70
Ill. 604; Flower v. Elwood, 66 Ill. 438; Broman v. Bingham,
26 N. Y. 483; Egg v. Barnett, 3 Esp. 196; 1 Hilliard on
Mortgages, 512; Doe v. Robinson, 24 Miss. 688; Fleming v.
Parry, 24 Pa. 47; Stewart v. Kissam, 11 Barb. 271; Haskell
v. Haskell, 3 Cush. 540; Lewis v. Baird, 3 McLean, 56; Briggs
v. Davis, 20 N. Y. 31; 2 Jones on Mortgages, § 984; Weir v.
Mosher, 19 Wis. 311; Ingle v. James, 43 Iowa, 286; Beal v.
Blair, 33 Iowa, 318; 2 Wharton on Ev. § 125.

Presumption of payment is aided by lapse of time, even less
than the statutory period: Jackson v. Sackett, 7 Wend. 101;

Berdan v. Allan.

Abdy v. Loneday, Finch, 250; Jackson v. Pratt, 10 Johns. 381; 2 Greenlf's Ev. § 528; Kirkpatrick v. Langphier, 1 Cranch, 85; Miller v. Evans, 2 Cranch, 72; Patterson v. Phillips, Hempst. 69.

PILLSBURY, J.    This action was brought by the appellant to recover upon a note made payable to his testator.    The note is as follows:

"GENESEO, June 9, 1863.

"Borrowed of David A. Smith, eight thousand dollars, which I promise to pay to him or order five years after date, with interest from date at the rate of ten per cent. per annum, payable annually at the banking house of M. P. Ayres & Co., in Jacksonville, Illinois.    And if interest be not punctually and annually paid, as aforesaid, at the option of the holder of this, it shall mature for principal and interest, and a deed of trust, executed to Ira O. Wilkinson, Whitfield Sanford and William T. Allan, to secure payment of this, may be foreclosed.    If, however, interest is suffered to run into arrear, it shall become principal and bear interest at the aforesaid rate.    And if I or my proper representatives, so long insist, payment of this may be postponed for ten years from this date, only on punctual and annual payment of interest.

"JAMES M. ALLAN."

The defendant below pleaded payment, and upon trial the issue made upon that plea was found for him, and the plaintiff appeals.

It is not claimed by the appellee that he ever in person paid to David A. Smith in his life-time, or to his executors since his death, the full amount due upon said note, as appearing by its terms, after deducting the payments made and indorsed upon it which are conceded to have been paid by him, but to establish such fact he relies upon the following circumstances:

The trust deed given by Allan to secure said note, conveyed to said trustees block 3, in Geneseo; the N. E. ¼ Sec. 8, the W. ½, N. W. ¼ Sec. 9, 31 acres, the south part of lot 5, of Sec. 16, 35 acres; the north part lot 6, Sec. 16, and the N. E. ¼ Sec. 17, all in the town 17, N. R. 3, in Henry county, and contained a provision allowing said trustees in their discretion to sell at pri-

vate sale on such terms as they deemed best, with or without warranty binding said Allan, so much of said land as would fully satisfy the purposes of the deed, but, upon default, then upon the requirement of the holder of said note, it should be the duty of said trustees upon sixty days' notice, to sell said land at auction, etc., to pay said note. In pursuance of the power in said trust deed contained, said trustees on the 10th day of Sept. 1864, executed a deed reciting the execution by James M. Allan, of the trust deed above mentioned, dated June 9, 1863, and referring to it as a part thereof; that on Sept. 10, 1864, Westley paid to said trustees $500, and made his note to David A. Smith for $5,500, payable as follows: $500, with ten per cent. interest from date, 1st of April next, and $500 annually thereafter, until the whole amount is paid, with interest annually at ten per cent.; for and in consideration of which premises said trustees, with covenant of general warranty of good fee simple title, binding on said Allan, pursuant to the provisions to said deed of trust, bargain, sell and convey to said Westley, to have and hold to him, his heirs, etc., forever, the following lands in Henry County: N. E. $\frac{1}{4}$ of Sec. 8, and W. $\frac{1}{2}$ of N. W. $\frac{1}{4}$ of Sec. 9, Town 17, N. R. 3 East, "reserving a full and perfect vendor's lien on said land, to secure the full and punctual payment of the installments of aforesaid note and interest, as said installments severally and respectively mature."

The defendant below then introduced in evidence a release deed from the executors of said Smith to said defendant dated Oct. 18, 1866, of all the lands named in said trust deed except the tracts sold to Westley wherein is recited the fact that the lien upon the Westley, land is deemed a sufficient security for the balance due upon the principal note, and therefore they release the remainder of said lands.

The defendant next introduced in evidence the following release from said trustees to Allan, dated Jan'y 19, 1875: " Know all men by these presents, that I, Ira O. Wilkinson, Whitfield Stanford and W. T. Allan, of the county of —— and state of Illinois, for and in consideration of one dollar to us in hand paid, and for other good and valuable considerations, the receipt whereof is confessed, do hereby grant, bargain, convey

and release unto James M. Allan all the right, title, interest, claim or demand, whatsoever I may have acquired in, through or by a certain indenture or trust deed, bearing date the fourth day of June, A. D. 1863, and recorded in the recorder's office of Henry county and state of Illinois, in Book 62 of Deeds page 236, to the premises therein described, to wit: The North East quarter of section eight and West half of the North West quarter of section nine, all in Township 17 N. Range 3, East of the 4th P. M. and which trust deed was made to secure certain promissory notes bearing even date with said deed, for the sum of eight thousand dollars and — cents."

These releases are all the evidence introduced by the defendant below to show that the principal note is paid. His theory is, that the Westley note was held as collateral to his note and the release of the trustees of the lien held by them upon the Westley land is *prima facie* evidence, that the executors of David A. Smith had collected the Westley note, and authorized the execution of the release by the trustees, and that applying the amount due upon that note in liquidation of his note, it would be fully paid. The court took this view of the effect of the release and instructed the jury that it was *prima facie* evidence of the payment of the Westley note to the executors.

It may well be doubted whether a mere release of the trustees of land held by them, raises a presumption that they have fulfilled their trust respecting the estate, but in this case we shall not stop to inquire if this be so, as in our opinion no such presumption can be indulged in under the facts appearing in this record. David A. Smith in his life-time was the owner of a large amount of real estate in Henry county and the appellee Allan was his agent to make sales of the same and collect payments from the purchasers. He had general charge and management of the affairs of Smith in that county, and after the death of Smith in the spring of 1865, Allan continued to act in the same capacity for his executors, Henry E. Dummer and the appellant.

When the land was sold to Westley the note given by him for the purchase price was received by Allan, who from time to time made collections from Westley, forwarded the same to Smith, and

after his death to Dummer, his active executor, with instruction to credit the amount upon his $8,000 note, which was done.

It clearly appears, we think, from the letters written by Allan to Dummer and copied in the record, that Allan took upon himself the collection of the various installments of the Westley note, under some kind of arrangement with Smith that so fast as collected the money should be applied upon the $8,000 note.

At the time of the death of Smith he still held said Westley's note, and at the request of the executors he sent to Dummer a copy of the same with the endorsement, showing how much had been paid by Westley thereon.

From the time of the death of Smith, Allan was continually importuning the executors to release a portion of the land from the lien created by the trust deed, particularly the lot in Geneseo, alleging as a reason that he was desirous of selling lots from it, and the balance of the land was more than ample security for what still remained unpaid upon the original note.

In accordance with his desire the executors authorized the trustees to execute the release to him of date of Oct. 18, 1866, of all the lands retained by him, reserving only the lien upon the lands sold to Westley.

On Nov. 11, 1865, he says in a letter to Dummer:

"I do not desire you to do anything not perfectly in accordance with your duties to the estate. It is right that you keep this as well as other debts amply secured. There is now less then 5,000 due from me to the estate. At the date of last payment, Aug. 16, 1865, it was about $4,500. All but about $1.000 will be paid by the Westley note; this note is for 240 acres of land within two miles of Geneseo. The sale was for $6,000; at the date of the last payment, Aug. 16, 1865, $490, there was, after the payment, about $3,500 due and to become due, with 10 per cent. interest. All that has been paid on this sale has been applied in payment on my note, and all that is to be paid is to be applied in like man..er as per agreement betwen Mr. Smith and myself.

" What I wanted was to turn over the Westley note, and get credit for just what it amounts to. The 240 acres are included in the trust deed. More then $2,500 has been paid on the

Berdan v. Allan.

Westley contract. The land is ample security for the balance of the note. You do not know, personally, anything of this; will the testimony of the trustees be good in this case? The family of Mr. Smith do not know anything of the value of the property.

"Wm. T. Allan, my brother, is one of the trustees, and will probably see you in a few days. He is now *en route* for Jacksonville. If this is done, there will remain about $1,000 for me to pay. To secure payment of this amount my farm, joining town, of 226 acres, valued at $50 to $60 per acre, and house and lot of 6 acres in the corporation worth $8,000 more, is held by virtue of the trust deed. I want to sell some of this property or all, if opportunity offers, and this big deed of trust may scare somebody, and prevent selling. I want my house and lot, Park Villa, 6 acres, released at all events. Should have sold some lots off it before now but for this deed, and would like to get the entire property released at once, if it can be done to your satisfaction." And in a letter of June 26, 1866 he says:

"H. E. DUMMER, Esq.: Yours of the 18th inst. duly received. I had no settlement with Mr. Smith since June, 1863. Do not know how much I collected for him. He always kept the accounts and settled to suit himself. I suppose his books will show the amounts received from me. Please send them to me. Also the amounts received by his executors. I probably have all his and your letters, but it would take a week to hunt them up. I got into this loose habit from unlimited confidence in Dr. Smith's honesty and accuracy. I found, however, he was getting somewhat forgetful in his last days. I suppose, under all the circumstances, it would be better for me to allow the $125 spoken of, yet I have no means of determining its accuracy. $1,000, more or less, will probably pay all my debts to the estate, excepting the amount due on the Westley note; that is amply secured by the property for which it is given. I can pay most any day the balance above the amount due on the Westley note. I do not want to borrow money and encumber other property to pay the amount due on the Westley note; besides being wholly unnecessary, it would hardly be proper. The Westley note is payable to D. A. Smith, and the security is in

your hands. Do you fully understand just how this matter stands? if not, ask questions, or do anything you please until you do. There is no earthly use to anybody in keeping so much of my property covered up as at present, if there was; if there were any risk in canceling that trust deed on my property, I would not say a word. I do not ask to be relieved from any personal responsibility in the premises. The property for which the Westley note was given is as good for the balance due on said note as all Jacksonville."

These letters make it clear that Allan was to see to the collection of the Westley note, and to the application of the proceeds to the payment of his own debt, and can not be reconciled with his claim now made, that said note should be applied in discharge of his indebtedness to the estate; and his further claim, that on the 2nd day of Feb'y, 1867, he had a settlement with Dummer, in which Dummer took the Westley note in payment of his own, is as clearly rebutted by his letter of March 2, 1867, to Dummer, in reference to the settlement. This settlement only included matters relating to his accounts as agent of the estate, as is shown by a statement of Allan, signed by him, as follows:

Estate of David A. Smith, to James M. Allan,   Dr.

To com's 5 per cent. on collections on sale of land from July 13, 1865, to Feb. 9, 1867, being 5 per cent. on $9,694.50 ............................ $484.72

Pd. for recording will of D. A. S., Henry Co...... 5.00

Com's on $11,796.07 on land sold and proceeds collected during the life time of D. A. S. since settlement, July 9, 1863 ............................ 588.45·

1866, Apr. 25, taxes of 1865, p'd by J. M. A....... 249.87

$1,328.04

By bal. from old acc't................... $125.00

By am't to bal........................ 1,203.04

$1,328.04

To am't due from estate of D. A. S................$1,203.04

Settled this 9th Feb'y, 1867, by allowing the above items

as a credit on the note of J. M. Allan, due D. A. Smith, as of their proper date, Feb. 9, 1867.                    Jas. M. Allan.

Following is the letter of March 2, 1867:

"Geneseo, Ill. March 2, 1867.

"H. E. Dummer, Esq.: I bid a final farewell to Springfield the next evening after seeing you. Came home sick with a cold. Have been looking over our accounts. It is not at all strange that in our hurry, some slight error should have been made. I find that the amount of money collected by me and forwarded to you, as per your letters acknowledging the receipt, &c., foots up ...........................$14,546.92
                                                                   1,363.35

Deducting therefrom the $1,363.35 paid on the West-
   ley note, and the amount on which to pay the 5 per
   cent. is .....................................  13,183.57
Instead of, as per settlement of the 9th ult.......   9,694.50

Making a difference of .........................   3,489.07
Five per cent. on $3,489.07 is ............$174.45
For error in taxes of 1865 ................   20.00

Amount due me ...................... $194.45
in addition to $1,203.104, as per settlement of 9th Feb'y, 1867. The amount of taxes paid by me for 1865, including Mr. Ayres' tax, was $269.17; the balance to be placed to my credit, is exactly $193.75; for error of taxes of '65, $20.00, should be $19.30. This $193.75 I suppose you will, with the $1,203.04, making together $1,396.79, place to my credit on the Westley note, which however, is not exactly regular." He then draws a pen through the words, "the Westley note, which, however, is not exactly regular," and continues: "my own note. Come to think, this looks better. That Westley note comes in to bother me whenever my own note comes in question, and it seems to me entirely proper that we take the Westley note on the 9th of Feb. 1867, at its value, in lieu of my own, for business purposes and for safe calculation in adjusting our accounts. Not that I wish in any manner to be relieved from obligation to

Berdan v. Allan.

see that the Westley note is ultimately paid. That note is payable to Mr. Smith; the title was made over to him in trust. I want to keep it along in line, so that if you and I are taken away, no difficulty will follow in adjusting, &c.   See—

The Westley note on the 9th Feb. 1867, amounts to  $3,172.79
Amount due me from the estate of D. A. Smith.... 1,396.79

Amount note and acc't due Feb. 9, 1867, ..........$4,569.54
Amount due on my note in your hand, Feb. 9, 1867  4,308.25

Balance due me Feb. 9, 1867 ...................  $261.29

" Unless adjusted soon I am afraid that $261.29 will get lost. Please look over these items and let me know if right, according to your accounts and reckoning. I shall probably collect several thousand dollars for you soon, and expect to sell several pieces of land before long. Believe I have before sent you a copy of the Westley note; will, however give you again the date, amounts and credit on next page, so that you can readily make the necessary calculations of amount due thereon." (Here follows a statement of the particulars above mentioned with credits.) " Hope you will be able without any difficulty, from the data given herein, to settle the matter herein contained to your entire satisfaction.                JAS. M. ALLAN."

In the light of this evidence, how can it be said that there is the slightest foundation for the claim of the appellee, that the Westley note was taken in payment of his note ? if so, why does he say in his statement of the settlement that the amount found due him for commissions, etc., were allowed as a credit upon his note due D. A. Smith?  Why does he give the amount due on his note in the hands of Dummer as $4,308.25? If they were to take the Westley note, how does it happen that he sends a copy of the Westley note in the letter of March 2nd, to Dummer, instead of the original?  It would seem that they would have exchanged notes, Allan taking up his own, and delivering the Westley note to Dummer if there was any just ground for the claim now urged. There is no evidence in this record that the appellee ever delivered the Westley note to the executors of the estate of Smith, or that he ever paid to them

Berdan v. Allan.

the balance due on his own note. He held the Westley note, and, as shown by his own letters, was to collect without commissions; and if any presumption is to be indulged in, that the Westley note has been paid, it would be that he received the money upon it. Not only is he shown to have held the note, but the release is made to him of the Westley lands; and it would be but reasonable to conclude that he was the one who obtained the release to himself, as the executors would most likely have requested the trustees to release to Westley, if Westley paid them the money.

If Allan, holding the note, should exhibit the same to the trustees, they being ignorant of the relation existing between Allan and the estate of Smith in respect thereto, how natural it might be for them to suppose that Allan had paid the original note, and taken up the Westley note from the estate of Smith, and have, at his request, executed the release to him.

Under the evidence in this case we are led to believe that if the Westley note has ever been paid, it was to Allan, as he has failed to show the note out of his hands, and it is not probable that Westley would make a payment upon it, without knowing that the party to whom he paid held the note. It is suggested by counsel for appellee that in any event the Westley note was held as collateral security for the $8,000, and if Allan collected it he did so as the agent of the estate, and having received the money, it pays his own note to the estate. This position is as indefensible in law as it is in morals.

A payee of a note entrusts the maker with certain collaterals for collection; the maker of the note collects the collaterals and fails to send the proceeds to the payee to be applied upon the principal note. This, according to the argument, pays the principal note.

We confess our inability to discover upon what principle of law this position can be sustained. As we have seen, he was to collect the note and apply the proceeds to the payment of his note, and until the payments were thus applied his note continued a subsisting obligation against him. The appellant had his note and introduced it upon the trial.

This made out a good cause of action in their favor against him,

and entitled them to recover what appeared to be due upon it, and the burden then rested upon the appellee to show that he had paid the note. This, in our opinion, he failed to do. Under the proofs in this case the release in question did not sustain the issue upon his part, and did not raise a presumption even, that the Westley note was paid to the executors.

How easy it would have been for the appellee to have called Westley and proved by him to whom he had paid the money, or to have called the trustees and learned from them at whose instance they released the lien upon the Westley land. This suit is between debtor and creditor, and the same presumption does not arise from the fact of the release, as would be raised in favor of an innocent purchaser buying the Wesley land upon the faith of such release.

It appears that after the death of Mr. Dummer, the appellee went to Jacksonville, where Dummer resided when in life, and there saw the son of Dummer, who then was in possession of his father's papers, and with them had the note in suit. The appellee was allowed to state in his own behalf, that while talking with the son, he told him this note had been paid. We think the court should not have permitted him to so state. The son, so far as appears, was not representing the estate, or in any way interested in the note, beyond being the mere custodian of it with other papers belonging to his father.

The son was not in a position to deny any such statements, or to make any admissions, expressed or implied, binding upon the estate of David A. Smith. The appellee has assigned one cross-error questioning the action of the court in refusing to allow the appellee to testify to conversations and transactions had by him with Mr. Dummer in his life-time and in the absence of his co-execution. In this we find no error. The action of the court was clearly within the spirit of the statute, if not so clearly within its letter, and we think, is fully sustained by the decisions of our own courts. Boynton v. Phelps, 56 Ill. 218; Merrill v. Atkin, 59 Ill. 19; Whitmer v. Rucker, 71 Ill. 411; Redden v. Inman, 6 Bradwell, 56.

For the reasons stated, the judgment of the court below will be reversed, and the cause remanded.

Judgment reversed.